CECIL DORSEY ET AL. *v.* VERNON VILLAGE, INC.

Superior Court, Judicial District of Tolland

File No. CV-07-4006889

Memorandum filed June 27, 2007

*Connecticut Legal Services, Inc., of Willimantic*, for the plaintiffs.

*Kathleen D. Stingle*, for the defendant.

A. SANTOS, J. The plaintiffs, Cecil Dorsey and Harriet B. Dorsey, seek permanently to enjoin the defendant, Vernon Village, Inc., from increasing their monthly rent from $500 per month to $600 per month. The plaintiffs also seek a determination as to a fair and equitable rental amount. A temporary injunction was issued by another court, enjoining the defendant from raising the plaintiffs' rent above $500 per month and from instituting a summary process action against the plaintiffs for failure to pay rent.

A hearing on the application for a permanent injunction was held on April 13, 2007. Cecil Dorsey, Harriet Dorsey and Joan Hollis, an officer of the defendant, testified at the hearing. Various documents were admitted into evidence. Memoranda of law were filed by both parties subsequent to the hearing.

I

FINDINGS OF FACTS

The plaintiffs are tenants in a manufactured mobile home park owned and operated by the defendant. The defendant is a corporation that owns the manufactured mobile home park known as Vernon Village, which is located in the town of Vernon. At least one of the adult tenants must have attained the age of fifty-five years

in order to reside in the park. The park does not have subsidized units, and the park is not a low income housing development.

There are a total of 200 lots with manufactured homes located in the park, sixty of which are owned and rented by the defendant to its tenants. All tenants pay $260 per month to lease the land where their unit stands. Those tenants who also lease their manufactured home from the defendant pay additional monthly rent. The additional rent varies from $225 to $390 per month.

The plaintiffs rent a manufactured home from the defendant. Cecil Dorsey is seventy-four years old, disabled and on a fixed social security retirement income. Harriet Dorsey is fifty-seven years old and employed. Cecil Dorsey has resided in the same unit, located at 325 Kelley Road, J-6, for twenty years. Harriet Dorsey has lived with Cecil Dorsey for ten years. When Cecil Dorsey moved into the unit, he was charged a total of $400 per month in rent. During his tenancy, the rent was increased to the current rate of $500 per month. The increases were not consistent in application or amount, and the current rent had not been increased by the defendant for five to six years.

In 2006, the defendant commenced a summary process action against the plaintiffs.[1] Specifically, the defendant alleged that on or about May 31, 2006, the plaintiffs' dog bit a person on the property of Vernon Village. A notice to quit was issued by the defendant on June 22, 2006. The plaintiffs' attorney moved to dismiss the summary process action, alleging that the notice to quit was defective. Before that motion was ruled on, the plaintiffs agreed to find another home for their dog. Thereafter, the defendant withdrew the

---

[1] The court takes judicial notice of the summary process action, docket number CV-06-4005404.

summary process action. The withdrawal was filed on December 8, 2006.

On January 30, 2007, the defendant sent the plaintiffs a letter giving notice that the plaintiffs' rental agreement had expired and that their tenancy was therefore on a month-to-month basis. The letter stated that the last written rental agreement was signed on April 28, 2005. The letter further stated that as of March 1, 2007, the plaintiffs' rent would increase from $500 per month to $600 per month.

The plaintiffs allege that the defendant's rent increase is retaliatory. The plaintiffs further allege that the rent increase is excessive. The defendant denies retaliation because the plaintiffs were allowed to remain in possession of their manufactured home after the dog was removed from the premises. The defendant asserts that the new monthly rent reflects the prevailing rents paid by those tenants who, like the plaintiffs, do not own their manufactured homes. Additional facts will be discussed as necessary.

## II

## DISCUSSION

General Statutes § 47a-23c prohibits eviction of certain tenants except for good cause. The plaintiffs in the present action are protected under the statute, which "applies to any tenant who resides in . . . a mobile manufactured home park and who is . . . (A) [s]ixty-two years of age or older, or whose spouse . . . is sixty-two years of age or older and permanently resides with that tenant . . . ." General Statutes § 47a-23c (a) (1). Tenants protected under the statute may have their rent "increased only to the extent that such increase is fair and equitable . . . ." General Statutes § 47a-23c (c) (1). The statute provides this court with jurisdiction to hear complaints made by protected tenants regarding proposed rent increases and to determine whether such

rent increases are "fair and equitable" under the law. General Statutes § 47a-23 (c) (2).[2]

In addition to enacting laws to protect certain tenants, our legislature has enacted specific laws that apply to manufactured mobile home parks. See General Statutes § 21-64 et seq. General Statutes § 21-70 (b) provides in relevant part: "The initial rental agreement and all renewals [for a mobile manufactured home or lot] offered to a resident by the owner shall be in writing. The term of each rental agreement and renewal shall not be less than one year unless the resident requests, in writing, a term for less than one year. If the owner fails to offer the resident a written renewal of a rental agreement, or if the owner offers a renewal but the resident fails or refuses to sign it, unless there is a disagreement as to the amount of the rent, the prior rental agreement shall be deemed to be extended for one year at the then prevailing park rental and the resident shall be bound by all terms of the prior rental agreement . . . . If there is a disagreement as to the amount of the rent, unless the owner terminates the lease and brings an action of summary process, the prior rental agreement shall be deemed to be extended on a month-to-month basis at the last agreed-upon rent . . . . In such an event . . . the resident may seek relief under section 47a-23c or sections 7-148b to 7-148f, inclusive, if applicable."

Although the parties did not submit the last rental agreement into evidence, a copy of it was attached to the defendant's 2006 summary process action. The rental agreement was a renewal of the previous

---

[2] General Statutes § 47a-23c (c) (2) provides in relevant part: "Any such tenant aggrieved by a rent increase or proposed rent increase may file a complaint with the fair rent commission . . . or, if no such fair rent commission exists, may bring an action in the Superior Court to contest the increase. . . ." The parties conceded that the town of Vernon has not established a fair rent commission.

agreement for a term of one year at $500 per month. It was signed by Cecil Dorsey on April 28, 2005. The January 30, 2007 letter from the defendant to the plaintiffs indicates that this was the last written rental agreement. By operation of § 21-70 (b), because there was no subsequent written renewal and the rental agreement signed on April 28, 2005, was for the term of one year, the rental agreement was extended for an additional year at a monthly rent of $500 on or about April 28, 2006. The rental agreement between the parties was due to renew again on April 28, 2007. On January 30, 2007, however, the defendant gave the plaintiffs notice of the proposed rent increase of $600 per month, to begin on March 1, 2007. By instituting the present action due to a disagreement about the rent increase, the plaintiffs' tenancy is currently on a month-to-month basis.[3] General Statutes § 21-70 (b).

General Statutes § 21-80 (b) (5) gives owners of manufactured mobile home parks guidelines for increasing rents. The statute provides in relevant part: "Nothing in this subsection shall prohibit an owner from increasing the rent at the termination of the rental agreement if (A) the owner delivers a written notice of the proposed rent increase to the resident at least thirty days before the start of a new rental agreement; [and] (B) the proposed rent is consistent with rents for comparable lots in the same park . . . ." General Statutes § 21-80 (b) (5). The defendant, through the January 30, 2007 letter, complied with the written notice requirement of the statute. The defendant maintains that the increased rent is consistent with comparable lots in Vernon Village. The plaintiffs contends that the increase is excessive and have therefore sought relief under General Statutes §§ 47a-23c and 7-148c.

---

[3] In the January 30, 2007 letter, the defendant incorrectly stated that the plaintiffs' tenancy was on a month-to-month basis at that time. The plaintiffs' tenancy did not become month-to-month until April 28, 2007, when the yearly rental agreement was not renewed due to the pendency of the present action.

Resolution of this case requires an assessment of the facts under §§ 21-80 (b) (5) and 7-148c. The court's inquiry is twofold: (1) whether the defendant complied with the requirements of § 21-80 (b) (5); and (2) whether the rent increase is excessive based on a consideration of the criteria set forth in § 7-148c.

### III

### GENERAL STATUTES § 21-80 (b) (5)

Concerning the first issue, as already stated, the defendant complied with the first requirement of § 21-80 (b) (5) in that the defendant sent written notice of the rent increase to the plaintiffs at least thirty days prior to the start of a new rental agreement. The court must now determine whether the proposed rent of $600 is "consistent with rents for comparable lots in the same park . . . ." General Statutes § 21-80 (b) (5).

Hollis testified that many of the mobile home units rent at $600 per month, and she pointed out a home exactly like the plaintiffs' that is rented for $600 per month. The defendant submitted a partial list of the sixty lots that have manufactured homes owned by the defendant. According to the list, the homes vary in age, model, size, the type of fuel used and whether the roof is flat or peaked. Hollis also testified that the driveways of the homes vary in width. The rent charged varies from $500 per month for an older (1972), smaller home to $650 per month for an older (1977), larger home. For example, the home listed as "Conn 3" was built in 1987, is slightly smaller than the plaintiffs' home and has a peaked roof. The tenant residing in that home pays $600 rent per month. The tenant occupying the home listed as "R16" pays $525 rent per month. That home was built in 1991, is smaller than the plaintiffs' home and has a peaked roof. Hollis testified that R16 is located in a less desirable area of the park.

The plaintiffs' home was built in 1987 and is longer than some of the other rented homes. The plaintiffs enjoy a driveway that is wide enough for two cars to park side by side. The roof of the plaintiffs' home was replaced by the defendant within the past two years, and their stove was replaced last year. Based on the foregoing, the court finds that the proposed rent for the plaintiffs' home is consistent with the rents charged by the defendant for comparable homes in Vernon Village.

The plaintiffs also allege that their rent increase is retaliatory based on the summary process action regarding their dog. Hollis testified credibly that the rent increase is not retaliatory. She stated that once the plaintiffs removed their dog, there was no reason to evict them from the premises. In addition, the proposed rent increase is found to be in accordance with § 21-80 (b) (5).[4] Thus, there is no credible evidence that the rent increase is retaliatory.

## IV

## GENERAL STATUTES § 7-148c

Concerning the second issue in this case, whether a rent increase is excessive for tenants protected under § 47a-23c (a) (1) depends on an assessment of the criteria set forth in § 7-148c.[5] Section 7-148c provides: "In determining whether a rental charge or a proposed increase in a rental charge is so excessive, with due regard to all the circumstances, as to be harsh and unconscionable, [the Superior Court] shall consider

[4] General Statutes § 21-80a prohibits retaliatory action by an owner of mobile manufactured homes and home parks. Section 21-80a (c) provides in relevant part: "[A]n owner may increase the rent of a resident if . . . (3) the owner in good faith is increasing the rent in a manner permitted by subdivision (5) of subsection (b) of section 21-80."

[5] General Statutes § 47a-23c (c) (1) provides: "The rent of a tenant protected by this section may be increased only to the extent that such increase is fair and equitable, based on the criteria set forth in section 7-148c."

such of the following circumstances as are applicable to the type of accommodation: (1) The rents charged for the same number of rooms in other housing accommodations in the same and in other areas of the municipality; (2) the sanitary conditions existing in the housing accommodations in question; (3) the number of bathtubs or showers, flush water closets, kitchen sinks and lavatory basins available to the occupants thereof; (4) services, furniture, furnishings and equipment supplied therein; (5) the size and number of bedrooms contained therein; (6) repairs necessary to make such accommodations reasonably livable for the occupants accommodated therein; (7) the amount of taxes and overhead expenses, including debt service, thereof; (8) whether the accommodations are in compliance with the ordinances of the municipality and the general statutes relating to health and safety; (9) the income of the petitioner and the availability of accommodations; (10) the availability of utilities; (11) damages done to the premises by the tenant, caused by other than ordinary wear and tear; (12) the amount and frequency of increases in rental charges; (13) whether, and the extent to which, the income from an increase in rental charges has been or will be reinvested in improvements to the accommodations."

The criteria set forth in subdivisions (1), (3) and (5) concern the rent charged for similar units and the number and types of rooms in a unit. No evidence was presented concerning rents charged outside of Vernon Village. As stated previously, the defendant rents a home exactly like the plaintiffs' for $600 per month. Comparable homes in Vernon Village also rent for about $600 per month.

Subdivisions (2) and (8) concern the conditions of Vernon Village and whether they are clean and in compliance with health and safety regulations.[6] Although

---

[6] General Statutes § 21-82 (a) sets forth the responsibilities of an owner, which include subdivision (1), complying with all applicable laws and regula-

there was testimony that the plaintiffs' home was among a cluster of "grandfathered, nonconforming" units, there was no evidence submitted demonstrating that the area where the plaintiffs' home is located is unsafe or that Vernon Village does not comply with health and safety regulations.

Subdivisions (4) and (6) involve the furnishings and equipment supplied in the plaintiffs' home and the repairs necessary to make the plaintiffs' home livable. The plaintiffs' stove was recently replaced, and a new roof was installed two years ago. Central air conditioning has also been provided to the plaintiffs. There have been no complaints concerning any other appliances or repairs that fall under the defendant's responsibility.

The criterion set forth in subdivision (7) concerns the amount of taxes and overhead expenses paid by the defendant. The defendant pays property taxes on all of the lots and units in Vernon Village. Hollis testified that this amounted to approximately $110,000 per year. Hollis further testified that the defendant has two full-time employees. There was no testimony indicating that the defendant has had difficulty paying for the costs associated with owning, running and maintaining Vernon Village.

Subdivision (9) concerns the income of the plaintiffs and the availability of accommodations. Harriet Dorsey testified that the plaintiffs' monthly income is approximately $1800 per month.[7] Based on their limited income and expenses,[8] the plaintiffs do not have much extra money at the end of the month. Moreover, Cecil Dorsey has resided in the same home in Vernon Village for

tions concerning health and safety, as well as subdivision (7), keeping all common areas in a clean and safe condition.

[7] On the application for a waiver of fees and appointment of counsel, the plaintiffs' monthly income was reported as $2027 per month.

[8] The plaintiffs' monthly expenses were reported on the application for a waiver of fees and appointment of counsel.

twenty years. He also has various health problems. No evidence was presented concerning the availability of accommodations; however, due to the plaintiffs' financial situation and the health of Cecil Dorsey, it would very difficult for them to move from Vernon Village.

Subdivision (10), which concerns the availability of utilities, and subdivision (11), which concerns damages to the premises by the plaintiffs, are not applicable to the present case.

Subdivision (12) involves the amount and frequency of rent increases. The defendant conceded that rent increases for the plaintiffs' home have been infrequent. In fact, during the past five or six years, the plaintiffs' rent has not been increased at all. When Cecil Dorsey moved into his home twenty years ago, his rent was $400 per month. Thus, over the course of twenty years, the plaintiffs' rent was increased a total of $100. Hollis testified that no other tenant's rent has been raised by $100.

Finally, subdivision (13) concerns the extent to which the rent increase will be invested in making improvements. There was no evidence presented that the proposed rent increase was justified for planned improvements to the plaintiffs' home or to Vernon Village.

On the basis of the foregoing, this court finds that the $100 rent increase proposed by the defendant is excessive. Although the plaintiffs are protected tenants and have a limited income, as stated previously, under § 21-80 (b) (5) the defendant is entitled to raise their rent. Indeed, the defendant has increased the plaintiffs' rent over the years; however, those increases were minimal and infrequent. The plaintiffs have had twenty years of incremental rent increases totaling $100, which their fragile income has been able to withstand. To expect them to bear an immediate $100 rent increase at this

time is not only harsh, it is also unreasonable under the circumstances.

Based on the facts of this case and considerations of fairness and equity, this court concludes that the plaintiffs' rent increase shall not exceed $35 per month. See General Statutes § 7-148d.[9]

## V

## INJUNCTIVE RELIEF

The plaintiffs seek a permanent injunction to prohibit "the defendant from raising [their] rent as a retaliatory measure and without showing that a rental increase is fair and equitable under the law." They also seek a permanent injunction to prohibit the defendant "from instituting a summary process action against [them] regarding their challenge to the rent increase."

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 236, 919 A.2d 421 (2007). "Adequate remedy at law means a remedy vested in the complainant, to which he may, at all times, resort, at his own option, fully and freely, without let or hindrance. . . . If the plaintiffs have an adequate remedy at law then they are not entitled to the injunction." (Citations omitted; internal quotation marks omitted.) *Stocker* v. *Waterbury*, 154 Conn. 446, 449, 226 A.2d 514 (1967).

In the present case, the plaintiffs do have an adequate remedy at law. They can contest the defendant's actions

---

[9] General Statutes § 7-148d (a) provides in relevant part: "If a [fair rent] commission [or the Superior Court] determines, after a hearing, that the rental charge or proposed increase in the rental charge for any housing accommodation is so excessive, based on the standards and criteria set forth in section 7-148c, as to be harsh and unconscionable, it may order that the rent be limited to such an amount as it determines to be fair and equitable. . . ."

and obtain relief under the General Statutes, as they did in this case. Under § 7-148d (a), the Superior Court can limit the rent "to such an amount as it determines to be fair and equitable. . . ." General Statutes § 7-148d (a). Moreover, if the defendant attempts to bring a summary process action against the plaintiffs, they may raise an affirmative defense that the action is retaliatory. General Statutes § 47a-33.[10] Thus, the court will not grant injunctive relief.

## VI

## CONCLUSION

In sum, the court finds that the defendant gave the plaintiffs proper notice of the rent increase and that the proposed rent of $600 is comparable with the rents charged to the residents of other homes in Vernon Village. That conclusion notwithstanding, this court finds that the $100 per month rent increase is excessive. In light of the circumstances of this case, the monthly rent to be paid by the plaintiffs for the next yearly lease period shall not exceed $535 per month. The defendant shall provide the plaintiffs with a written rental agreement for the term of one year, starting on or about July 1, 2007, as required under § 21-70 (b).

---

[10] General Statutes § 47a-33 provides in relevant part: "In any action for summary process under this chapter or section 21-80 it shall be an affirmative defense that the plaintiff brought such action solely because the defendant attempted to remedy, by lawful means, including contacting officials of the state or of any town, city, borough or public agency or filing a complaint with a fair rent commission, any condition constituting a violation of any of the provisions of chapter 368o, or of chapter 412, or of any other state statute or regulation or of the housing or health ordinances of the municipality wherein the premises which are the subject of the complaint lie. . . ."